# MARCH TERM, 1847.

〜〜〜〜〜〜〜

## EVANS & RIEHL vs. LABADDIE.

1. The title acquired by an entry with the Register and Receiver of the U. S. Land Offices, on which no patent has issued, will yet pass to the grantee in a deed purporting to convey the land in fee simple absolute, made before the entry by the person entering the land.

2. A deed conveying a tract of land subject to the conditions of an agreement by which the vendor is bound to convey one-half the land to a third party, vests the legal title to the whole tract in the vendee.

3. The certificate of the Surveyor General that a certain lot of land is embraced within the limits of a tract confirmed by the Board of Public Schools, under the act of 1824, is not evidence.

4. Sales made in this State by the Marshal of the U. S., on executions from the U. S. Courts, are governed by the laws of this State regulating executions.

Scott, J., dissenting as to 1st point.

## APPEAL from St. Louis Circuit Court.

## *Statement of the Case adopted by the Court:*

This was an ejectment in the St. Louis Circuit Court by Labaddie against Evans & Riehl for a lot of ground in the city of St. Louis, brought on the 19th October, 1841. It was tried 7th Feb'y, 1844, and a judgment rendered for plaintiff below. A new trial was asked for, 1st, because the verdict was against evidence; 2nd, against law and evidence; 3rd, against the weight of evidence; 4th, because the court improperly admitted evidence; 5th, because the court gave wrong instructions for plaintiff; 6th, because the court refused to give instructions asked by defendant; 7th, be-

28

cause the court, of its 'own motion, gave wrong instructions; 8th, because of newly discovered evidence. This motion was overruled. The affidavit disclosing newly discovered evidence, as it is called, merely states that since the trial the defendant has obtained a deed for half of the land· ·from the administrator of R. Duncan, on a sale previously made by the Probate Court.

The bill of exceptions is long, but the following is a brief abstract of the facts. The plaintiff read in evidence a paper executed by A. H. Evans, one of the defendants, to Elias T. Langham, dated January 9th, 1836, wherein Evans relinquished to Langham the lot of land in question; also, a deed from said Langham to William T. Sanford, dated 14th March, 1838, for the same lot and two others, for the consideration of $1500, stated in the deed to have been paid, which was re-corded 16th April, 1838; also, a deed from said Sanford to the plaintiff, dated the 13th of July, 1840, for same lot, recorded 9th November, 1840. The plaintiff having also proved possession of the· lot at the time of the commencement of suit by defendants, and the rents and profits,. and also monthly value, rested his case.

The defendants then proved that Evans built the house and made the improvements on the lot· in question, and gave in evidence a designation of land, signed by Silas Reed, Surveyor,.&c., da-ted 17th Jan'y, 1844, setting apart a parcel of land, which embraced said lot, for the use of schools,. and is bounded south by Soulard, west by the Mackay tract, north by Auguste Chouteau, and east by the Mississippi, and is precisely the same piece of land that was fractional section 26, town-ship 45 north, range 7 east of the 5th principal meridian. The defendants then read in evidence· the Receiver's duplicate receipt, dated 2nd May, 1836, evidencing a sale to Robert Duncan of said fractional section; also the plat of survey of the same; also a judgment record, comprehend-ing merely the judgment itself, without the writ, declaration or pleading, which judgment was rendered on the 4th April, 1839, in the United States Circuit Court for the Missouri district, in fa-vor of the United States against said Langham, for $10,796 36; also an execution thereunder, da-ted 10th Oct'r, 1839, and Marshal's deed, dated 13th April, 1840, setting forth advertisement and sale to Evans on the 3rd April, 1840, of said fractional section for the sum of $100, and conveying to him all such right as Langham had at the time of the rendition of the judgment; which deed was recorded 20th April, 1840. The defendant likewise gave in evidence an agreement be-tween Robert Duncan and said Evans, dated 20th December, 1834; stating that Duncan had proved a pre-emption right to said piece of land, (viz: fractional section 26, aforesaid,) and agreed to let Evans have one-half of that which lay between the little creek, Soulard, and Mackay, on Evans paying the Government for the whole; and also, a proportion of another pre-emption right, on· his paying Government also for that. This agreement was recorded 12th May, 1836. Evidence· was given tending to show that Labaddie purchased said lot from Langham and paid him, and then applied to Sanford and got a deed for the same, Sanford telling the witness that he did not own the· lot and that he had deeded it to Langham. It appeared that Sanford was dead when the trial was· had. The defendant here closed his case.

The plaintiff then read in evidence a deed from Robert Duncan to said Langham, dated 29th June, 1835, conveying to him the said tract of land entered by him according to said Receiver's receipt and subject to the said article of agreement made between him and Evans of 20th December, 1834,. which land included the lot in question. The plaintiff gave in evidence a plat of subdivision of said fractional section 26, showing that it was laid off into town lots.

The defendants asked eleven instructions, of which the 2nd, 3rd, 5th and 7th were given, and the others refused.

1. The court is requested to instruct the jury, that if they find from the evidence that the lot of ground mentioned and described in the plaintiff's declaration is embraced within and belongs to the land set apart and reserved for the use of the town of St. Louis for the benefit and support of schools, as more particularly set forth and described in the certified designation from the office of the Surveyor General of the Public Lands in the States of Illinois and Missouri, which said cer-tified designation has been read in evidence, they will find for the defendants.

2. If the jury find from the evidence that no title to the land in question has passed from Duncan to the present plaintiff, by direct deed or intermediate conveyance, they will find for the defendants.

3. That the certificate of the Receiver, read in evidence, is evidence of title in Duncan from the date of the same.

4. That the deed read in evidence from Duncan to Langham, as far as it relates to the land in question, being subject to conditions expressed or referred to in the deed, the condition must be taken in connection with the deed, and if, from both condition and deed, Evans was a joint tenant with Langham, they will find for the defendants, unless they find from the evidence that Evans' interest has been legally conveyed to the plaintiff.

5. That the judgment of the United States against Langham was a lien on the land of Langham from the rendition of the same, and that the sale of the Marshal to Evans passed to Evans all the title that was in Langham at the time of the rendition of said judgment or sale.

6. That the United States are entitled to priority, and that their priority commences as early as the service of the writ vs. Langham, and the subsequent sale by the Marshal passes to Evans all the title of Langham at the time of the said service and at the time of the sale.

7. That the writing offered in evidence by the plaintiff, bearing date 9th May, 1836, and purporting to be a relinquishment from Evans to Langham of the land in question, passed no legal title to Langham.

8. That if the jury find from the evidence, that at the time of Sanford's deed to Labaddie, the plaintiff, Langham, was the owner of the lot in question, and by a previous conveyance from Sanford, and while so owned by Langham, the United States obtained a judgment against Langham, the said judgment and sale under it passes the title to the said purchaser under said sale.

9. That the Marshal's sale and deed passes the title to Evans, the defendant, and the title so obtained by Evans does not enure to Langham and his grantees.

10. That the statement of William T. Sanford to Edward Warrens, the agent of the plaintiff, Labaddie, at the time of the execution of the deed from Sanford to Labaddie, that he was not the owner of the land and had previously deeded the same to Langham, and the testimony of Warrens that no consideration money was paid Sanford, together with the fact that Labaddie purchased of Langham the land in question and paid him, Langham the consideration, is competent testimony to show title in Langham at the time of Sanford's deed to Labaddie.

11. That the evidence of Sigler, the witness produced by the plaintiff, that he purchased a portion of the same tract from Langham originally belonging to Duncan and sold to Langham, and also took his deed from Sanford at the time without payment to Sanford but with payment to Langham, is competent testimony to show title in Langham at and before Sanford's deed to Labaddie.

The Court, of its own motion, gave the following instructions:

The Marshal's deed passes nothing to Evans except such interest, if any, which Langham had at the date of the judgment upon which the Marshal's sale was had.

If the jury believe from the evidence that the conveyance of Langham to Sanford was made with the intent to hinder, delay, or defraud creditors, prior or subsequent, the same is void, and any acts or declarations of Langham and Sanford upon the occasion of the conveyance to Sanford, or any acts or declarations of Sanford or of Langham sanctioned by Sanford after the conveyance, may be offered in evidence. Such conveyance of Langham, however, is not void as to Labaddie, unless he was party or privy to the fraud intended, or had actual notice thereof.

The Court then gave the following instructions asked by plaintiff:

That there is no evidence of the conveyance of the lot in dispute by Sanford to Langham. 2. B.

That the designation by the Surveyor General of the land for the use of Public Schools, read in evidence in this cause, shows no title in the St. Louis Public Schools to the lot in controversy.— 3 B.

That the deed under the Marshal's sale, with the record of judgment under which the same

*Evans & Riehl* vs. *Labaddie.*

was made, as read in evidence in this case, shows no legal outstanding title in bar of plaintiff's action. 4 B.

The Court then, of its own motion, gave the following instructions:

Any title, that vested in Duncan by the Receiver's certificate, immediately passed to Langham, if Duncan had then before conveyed said land to him. 1 A.

The article of agreement between Duncan and Evans,. dated 20th Dec'r. 1834, passed no legal title to Evans in the land in controversy. 2 A.

At the conclusion of all the testimony and instructions, is the following: "To all of which instructions so asked by the plaintiff's counsel and given by the court, and to all which decisions and refusal to instruct, and to the giving the instructions on the court's own motion, and the giving of the instructions asked for by the plaintiff, and to the admitting of the testimony and evidence of the plaintiff, the defendant excepted."

The motion for new trial was made on the 9th Feb'y, and an affidavit as to newly discovered evidence was sworn to and filed on the 23rd Feb'y. The reasons and affidavit are set forth in the bill of exceptions, immediately following the instructions, and then it is stated that the court "overruled the motion, and rendered judgment upon the verdict of the jury. To all which judgments, decisions and actions of the court, the defendants, by their counsel, except and write this their bill of exceptions," &c.

The assignments of errors are five, as follows:

1. The general assignment of error.

2. That the court refused to give the 1st, 4th, 6th, 8th, 9th, 10th and 11th instructions of defendants.

3. That the court gave plaintiff's instructions, marked (2 B,) (3 B,) (4 B,) (1 A,) and (2 A.)

4. That the court allowed plaintiff to give in evidence the deed of Duncan to Langham, without evidence of title in Duncan.

5. That the court refused to grant a new trial.

POINTS AND AUTHORITIES.

LESLIE, *for Appellants, contends:*

1. That the plaintiff has shown no such title to the land in dispute as entitles him to recover in this action.

2. A Register and Receiver's certificate passes no title to the land purchased, but the same remains in the government of the United States until a patent issues therefor according to the laws of the United States. 13 Peter's, 498, Jackson vs. Wilcox; 13 Peter's, 436, Bagnell vs. Brodrick.

3. The deed from Duncan to Langham was improperly admitted in evidence, because the deed conveys but an undivided interest in the lands sued for, and therefore is no evidence to support ejectment, inasmuch as one tenant in common cannot maintain a separate action for the entire premises. 5 Eng. C. L. Rep., 4.

4. The court ought to have given the 8th, 9th, 10th and 11th instructions asked by defendants.

5. The defendants' motion for a new trial ought to have been granted. The principle which obtains on motion for a new trial for newly discovered evidence is directly applicable to the point in question; and that which would give a new trial in the first case, would, upon principles of law, prevail in the case at bar.

SPALDING, *for Appellee, contends:*

1. The title out of the United States was originally in Duncan, and by his deed vested in Langham, which inured to the benefit of Sanford, and through him to the benefit of plaintiff. The

deed of Duncan to Langham is prior in date to that of Langham to Sanford. Rev. Code of 1835 and 1825, title Conveyances; 3 Dal., 425; 6 Mo. Rep. 106, 113.

2. There is no objection to any of the testimony preserved on the record; the general statement at the close of the bill of exceptions, that the defendant excepted to all of plaintiff's testimony, will not answer. 8 Mo. Rep., 128; 3 Howard's Rep., Camden vs. Doremus, Suydams and Nixon. Besides, it was relevant and competent, although it may not have fully proved the case.

3. The deed from Duncan to Langham conveyed the whole estate of Duncan, and not merely the undivided half, as was contended by defendant below. There is not any condition on the face of the deed; but it conveys subject to an agreement with Evans. The title passed subject to that agreement.

4. The 8th instruction of defendant ought not to have been given, because—First, It assumes that there was evidence of a previous conveyance by Sanford to Langham when there was none; Second, It is equivocal in the word "owner," for it there might be considered in its popular sense, and Langham be the "owner" while the legal title was vested in Sanford; Third, It assumes that the Marshal's sale passes title.

4. Defendant's 9th instruction was wrong, and was therefore rightfully refused. It asserts that the Marshal's sale and deed passed the title to Evans, &c. It is wrong in three particulars:—

First, The record shows no authority in the Marshal to make the sale and deed. There was proved no rule of court, and there is no act of Congress authorizing it. Second, No act of Congress, rule of court or practice was proved or shown establishing the right to proceed to sell in the mode adopted. Third, The judgment record is incomplete and shows no authority to sell.—Fourth, It assumes that there was title in Langham, and thus shuts out the consideration of the jury.

6. The 10th instruction of defendant was wrong. The bare statement of Sanford that he had made a deed to Langham, is not competent testimony of such conveyance.

7. The 11th instruction of defendants was also illegal, for Sigler's transactions as to another lot proved nothing as to the one in question, and even if it did, it proved only that Labaddie held the property for Langham—not that he had conveyed it to him.

8. The title of the Public Schools set up by defendant cannot avail, as the proof thereof was incomplete, and as defendant also showed another title prior in date emanating from the United States to Duncan, and as defendants were not in a situation to set up such outstanding title. 9 Mc. Rep., Macklot vs. Dubreuil, shows that defendants could not set up the school title.

9. There was no ground for new trial on the affidavit of newly discovered evidence. The deed should have been shown, &c. Duncan had no title, and his deed would have conveyed nothing, as he had conveyed the whole to Langham; and further, it is not a case like one of newly discovered evidence. The court is asked to let in a defence that accrued after the trial and judgment. 7 Mo. Rep., 497, new trial will not be granted when it is evident that the party applying could derive no benefit thereby.

10. There is no ground for new trial in any of the other instructions.


NAPTON, J., *delivered the opinion.*

The principal question in this case depends upon the effect of the deed from Duncan to Langham, dated 29th June, 1835. That deed purported to convey a certain tract of land in St. Louis county, describing it by its metes and bounds, it being a tract to which the grantor, Robert Duncan, claimed a pre-emption under the several acts of Congress, commencing with the act of 12th April, 1814. Duncan's entry of the tract was not

made until May 2, 1836, nearly a year after this conveyance to Langham; and this raises the question whether this subsequently acquired title of Duncan will pass to Langham by virtue of the previous deed. The solution of this question depends altogether upon the construction of the third section of the act concerning conveyances, which provides as follows: If any person shall convey any real estate by a *conveyance* purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal estate had been in the grantor at the time of the conveyance. This statute, it will be perceived, is not a recognition of the common law, but is a material modification of it. The doctrine on this subject at the common law, is thus laid down in Coke Littleton, s. 446: By a release, no right passeth but the right which the releaser hath at the time of the release made; as if the son *release to the disseisor* the right which he hath or may have, without clause of warranty; after the death of his father, the son may enter against his own release, because he hath no right at all at the time of the release made, the right being at the time in the father. Had there been a warranty, it would have operated by way of estoppel. Our statute is silent about any warranty; where the deed purports to convey a *fee simple absolute*, whether with or without warranty, the subsequently acquired legal title will pass.

It is quite apparent in looking at this act, that a strict and literal construction may be given to it, which will exclude from its operation the title which Duncan acquired by his entry at the United States Land Office. This title, it is said very properly, is not a legal title; that being in the United States until the patent has issued. This objection admits that if the patent had issued, the title so acquired by Duncan would, by virtue of this legislative enactment above referred to, pass at once to Langham.

Our act regulating the action of ejectment authorizes this action to be maintained upon an entry with the Register and Receiver. Whether this title be called then a legal or an equitable one, it is one upon which its holder may maintain an action of ejectment. If we adopt the construction which makes this title by entry a legal title when the action of ejectment is spoken of, but an equitable title only when the act concerning conveyances is construed, we shall have a most singular and awkward condition of things brought about by this legislation. A. conveys

to B. a tract of land upon which he has a claim, and subsequently enters the land. His *entry* will enable him to bring an ejectment, and oust the purchaser, B.; whereas, *if the entry had been consummated in a patent,* his title would have passed by virtue of this section of our law of conveyances at once to B. and no action of ejectment could have been maintained! If the title by entry was a mere equitable title, in the proper sense of that term, before the interference of our statute concerning the action of ejectment, no such absurdity would be presented, and the grantee designed to be protected by the third section of the law of conveyances could wait without inconvenience for the emanation of the legal title. But if an entry with the Register and Receiver be such a title as will maintain an ejectment, then it must follow that, whether that title is called a legal or an equitable one, it has all the elements which constitute that sort of a title designed to be affected by that provision in the statute of conveyances to which we have heretofore alluded. That section obviously designed that any title coming to a grantor *which would clothe him with the power of turning his grantee out of possession,* should not vest there, but pass on directly by operation of law to the grantee.— The words 'legal title' are used in this sense, and to all intents and purposes the title which maintains ejectment is a legal one. Will it be pretended that one who has title by entry cannot convey that title to another so as to enable that other to bring his ejectment? I mean where the conveyance is subsequent to the entry. If this be conceded, and it is held, that the title by entry will not enure to the grantee under a grant previous to the entry, but at the same time is a sufficient title to maintain ejectment, then in the interval from the entry to the emanation of the patent, the title will be in a situation to enable the holder to commit the grossest frauds. Here is a conveyance before an entry, and the grantee, so soon as the patent has issued, it is conceded, will get the title which issues to the grantor; but as the title by entry is also capable of being conveyed, and of being conveyed so as to enable the vendee to bring ejectment thereon, a grantee subsequent to the entry will acquire a good title, *the continuance of which will depend upon the amount of business in the Patent Office at Washington.*

A second question which has been discussed in this case, arises upon this same deed from Duncan to Langham. This deed conveys the tract of land, embracing the lot now in dispute, to Langham "subject to the terms and stipulations of an article of agreement between him and A. H. Evans, which bears date, &c., and is herewith delivered to said

Langham." This agreement between Duncan and Evans was made 20th Decem., 1834, and it was in substance that, so soon as Duncan acquired the title from the United States, he "was to let the said A. H. Evans have one-half of the pre-emption," &c. This, then, was an agreement to convey, not a conveyance. Duncan conveys to Langham subject to this agreement; Langham consequently occupies the position of Duncan and holds the title subject to his agreement to convey one half the land to Evans.

The defendant below, in addition to the objections to the plaintiff's title already alluded to, relied upon an outstanding title in the St. Louis Common Schools, and a title acquired by himself under a sale by the United States Marshal on an execution against Langham in 1840. In relation to the title of the Public Schools, but little need be said, as the only evidence of that title was a paper from the Surveyor General's Office purporting to be a designation of this tract of land (among others) as one of those confirmed to the Board of Public Schools by virtue of the act of 1824. This certificate states that the lot in controversy is within the limits of the out boundary of St. Louis; that it was not owned or claimed by any person in 1812; that it is no part of the St. Louis Common, and consequently it is within the second section of the act of 26th May, 1824. Of these several matters thus certified to, the Surveyor General is not the judge, and his certificate alone has not been made even *prima facie* evidence of title, as the certificate of the Recorder was under the same act, in relation to another class of lots.

There are two objections urged to the title derived by Evans under the Marshal's sale: First, that the rules of the court wherein the judgment is obtained were not shown, so that we could ascertain whether the sale was made in conformity to law; and, secondly, admitting the rule to be valid and regular, it only conveyed an equitable title, as Langham had only an equitable title at the time of the judgment upon which the execution issued, and under which the sale was made. The first objection, we think, is not a good one. The third section of the act of May 19, 1828, (4 Story, L. U. S. ch. 68,) declares that writs of execution and other final process issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each State respectively, as are now used in the Courts of such State, saving to the United States Courts in those States where there are no Courts of Equity, the power of prescribing the mode of executing their decrees in equity;—provided, that it shall be in the power of the Courts, if they see fit, in their discretion, by rules of

court, so far to alter final process in said courts as to conform the same to any change which may be adopted by the Legislature of the respec-tive States, for the State Courts. The advertisement and sale by the Marshal must be governed, not by any rules of the Circuit Court of the United States, but by the laws of this State. No objections to the valid-ity of their sale, from any want of conformity to our laws regulating sheriffs' sales, has been suggested. But a substantial objection to the availability of this title in the present action arises out of the fact, that Langham had conveyed the lot in controversy to Sanford nearly a year before the judgment was obtained, on which the execution issued. It is true, that if this conveyance was made by Langham to defraud his cred-itors, it is a nullity, so far as those creditors are concerned; but this question, if it was designed to be raised, seems not to have been dis-tinctly placed before the jury by any of the instructions asked of the Court. The 8th instruction which the defendant below asked, but which was refused, was in these words: "If the jury find from the evidence that at the time of Sanford's deed to Labaddie, the plaintiff, Langham, was the owner of the lot in question, and by a previous conveyance from Sanford, and whilst so owned by Langham the United States ob-tained judgment against Laugham, the said judgment and sale passes the title to the purchaser under said sale." Here is an assumption of a con-veyance from Sanford to Langham about which there was no proof be-fore the jury. A witness, it is true, does testify that whilst acting as agent for an individual who had purchased a lot in this same tract, he called upon Sanford for a deed, by Langham's direction, and was inform-ed by Sanford that he (Sanford) had no title, having reconveyed to Lang-ham. This may be evidence of a fraud, but not of a deed. The 9th in-struction was, that the Marshal's sale and deed pass the title to Evans, the defendant, and the title so obtained by Evans does not enure to Lang-ham. This instruction was also refused, and properly, because it was calculated to convey the impression that the title so acquired was a le-gal one. In the 10th instruction, the Court is requested to instruct the jury that the statement of W. T. Sanford to Edward Warrens, the agent of the plaintiff, Labaddie, at the time of the execution of the deed from Sanford to Labaddie, that he was not the owner of the land and had pre-viously deeded the same to Sanford, and the testimony of said Warrens that no consideration was paid Langham, together with the fact that La-baddie purchased of Langham the land in question, and paid him, Lang-ham, the consideration, is competent testimony to show title in Langham

at the time of Sanford's deed to Labaddie. The 11th instruction is on the same subject, and its object is to declare the testimony of another witness, that he purchased a portion of the same tract from Langham, originally belonging to Duncan and sold to Langham, and also took his deed from Sanford at the time, without payment to Sanford, but with payment to Langham, as competent testimony to show title in Langham at and before Sanford's deed to Labaddie. It is quite apparent that the only tendency of this evidence is to show an equitable title in Langham, with a legal title in Sanford, all of which may have been honest or fraudulent according to circumstances, and those circumstances do not appear. The pecuniary condition of Langham at the time of these several conveyances is not shown; whether he was largely indebted or not, or whether his property was amply sufficient to pay his debts or not, are facts about which no testimony was offered.

The judgment of the Circuit Court is affirmed, Judge McBride concurring.

Scott, J., *dissenting*.

I do not concur in the opinion that the conveyance of the equitable title to Duncan enures to the benefit of Langham. The statute on the subject applies only to legal estates, and there is no foundation in the common law for the idea that a deed of conveyance will pass a subsequently acquired title. The distinction between legal and equitable estates is as broad as that between light and darkness, and we cannot suppose that any legislator, in a country where the common law prevails, would be unapprized of it. Statutes which cover the ground previously occupied by the common law, must be construed in reference to it. The doctrine of the common law was, that no right passed by a conveyance but that which the party had at the time of its execution. *Nemo dat quod non habet.* But if there was a warranty in the conveyance, then the conveyance operated. For, albeit, the conveyance cannot bar the right for the cause aforesaid, yet the warranty may rebut and bar the grantor of a future right which was not in him at that time, and this is for avoiding a circuity of action. 2 Coke, 265–6; 4 Maul. & Sel., 480; 9 Cowen, 13; 4 Wend., 300. This doctrine is strictly applicable to legal conveyances. This being the state of the common law, a statute enacts, if a person shall convey any real estate by a conveyance purporting to convey the same in fee simple absolute, and shall not at the

time of such conveyance have the legal estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal estate had been in the grantor at the time of the conveyance.— Now if an equitable estate in land had been a thing unknown to the Legislature at the time of the enactment of this law, and had subsequently sprung into existence, there might be some propriety in saying it was in the contemplation of the General Assembly. But equitable estates were well known; the difference between them and legal estates was before the Legislature, as may be seen by reference to the statute concerning ejectment, enacted at the same session that the statute concerning conveyances was enacted. Under these circumstances, how can this Court be warranted in interpolating the word equitable into the statute? Such a power, under the circumstances is clearly legislative.

When a deed of conveyance is made by a party having no title, if the grantee will put it upon the record, it will protect him from all subsequent alienations made by the grantor.